UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BESTLIFE HOLDINGS, INC. d/b/a CENEGENICS,<br><br>Plaintiff,<br><br>v.<br><br>ANTI-AGING AND WELLNESS CLINIC, aka ANTI-AGING AND WELLNESS, aka ANTI-AGING & WELLNESS CLINIC, aka ANTIAGE AND WELLNESS CLINIC; ALUVALIFE, LLC, aka ANTI-AGING AND WELLNESS, aka ANTI-AGING AND WELLNESS CLINIC, dba ANTI-AGING AND WELLNESS MEDICAL; ANTI AGING COSTA RICA aka ANTI-AGING COSTA RICA; JAMES D. RICHIE; and JOHN DOES 1-10, unidentified individuals and/or entities,<br><br>Defendants. | Case No. 2:20-cv-01081-KJD-VCF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

    Before the Court is Plaintiff's Motion for Default Judgment (ECF #32). Defendants did not respond to the motion.

    I.    Factual and Procedural Background

    Plaintiff Bestlife Holdings, Inc. d/b/a Cenegenics ("Cenegenics") brought this action against Defendants on June 16, 2020. (ECF #1). The complaint alleges four causes of action: federal trademark infringement, Nevada trademark infringement, federal unfair competition, and deceptive trade practices under N.R.S. Chapter 598. Id. at 21–27. Cenegenics holds federally registered trademarks for the word "CENEGENICS" and for the "CENEGENICS" design mark. Id. at 2. Defendants have used the Cenegenics name without authorization on their websites, social media pages, blogs, and videos. Id. at 3. Presently, only Defendants Anti Aging Costa Rica and Anti-Aging and Wellness Clinic remain in the action.

Cenegenics served Defendant Anti Aging Costa Rica on October 2, 2020, by substitute service on its president, Bruce Edward Hubert ("Hubert"). Id. at 9. After making an effort to serve Hubert personally, Cenegenics hired a process server who left the complaint and summons at Hubert's home with his adult daughter, who is believed to live at the premises. (ECF #32-3, at 14–15). Cenegenics filed the proof of service (ECF #24) and mailed a copy of the complaint and summons to Hubert. (ECF #32-3, at 15). Hubert acknowledged that he received the complaint and summons in a voicemail he left with Cenegenics's counsel. Id. In the message, Hubert stated, "this is Bruce Hubert calling in regard to the lawsuit with Cenegenics against Anti Aging [sic] Costa Rica" and left his phone number. Id. Hubert did not answer when Cenegenics's counsel called him back. Id. Hubert also acknowledged the lawsuit in a letter he sent to Cenegenics on or around October 8, 2020. (ECF #32-9, at 151). The letter is addressed to Cenegenics's counsel in Las Vegas, has a subject line of "Summons in a Civil action ANTI AGING COSTA RICA," and states, "Regarding the above referenced law suit, [sic] [t]he web site named 'Costagenics.com' no longer exists. This was changed months ago. Consequently this law suit [sic] is pointless." Id. The defendant did not file an answer, a pre-answer motion, or make any other indication that it would participate in the litigation.

Cenegenics served Defendant Anti-Aging and Wellness Clinic via a process server on September 9, 2020. (ECF #32-3, at 16). The process server served the company's receptionist at their place of business in Orlando, Florida. Id. The summons was returned executed on September 14, 2020. (ECF #14). Like the other defendant, Anti-Aging and Wellness Clinic has not filed anything or made an appearance.

On January 6, 2021, Cenegenics filed a consent decree of permanent injunction as to Defendants Aluvalife, LLC and James D. Richie. (ECF #23). Those Defendants agreed to the injunction, which the Court granted on January 7, 2021. (ECF #24). On February 17, 2021, Cenegenics moved for a clerk's entry of default against Anti Aging Costa Rica. (ECF #26). The clerk entered the default on February 17, 2021. (ECF #27). Cenegenics then moved for a clerk's entry of default against Anti-Aging and Wellness Clinic on October 18, 2021(ECF #28). The clerk entered default on November 1, 2021. (ECF #30). With the default entered against the

remaining two defendants, Cenegenics filed the instant motion for entry of default judgment. (ECF #32).

## II. Legal Standard

The Rules of Civil Procedure permit default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). There are two steps involved in obtaining a default judgment.

> First, the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, second, once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party.

J & J Sports Productions, Inc. v. Chikiss Botanas N' Beer, LLC, No. 2:18-cv-745-JCM-VCF, 2020 WL 2559941, at *1 (D. Nev. May 20, 2020) (citing UMG Recordings, Inc. v. Stewart, 461 F. Supp. 2d 837, 840 (S.D. Ill. 2006)). "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). District courts have "an affirmative duty to look into jurisdiction over both the subject matter and the parties" prior to entry of default judgment. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). "Generally, the court accepts the factual allegations in the plaintiff's complaint as true but requires the plaintiff to prove damages." Mayweather v. Wine Bistro, No. 2:13-cv-JAD-VCF, 2014 WL 6882300, at *3 (D. Nev. Dec. 4, 2014) (citing Televideo Video Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987)).

## III. Analysis

The Ninth Circuit has provided factors for courts to consider in exercising discretion regarding entry of default judgments. The factors include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 Moore's Federal Practice ¶ 55–05[2], at 55–24 to 55–26). While default judgments are "ordinarily disfavored" and cases "should be decided upon their merits," the Court finds that the Eitel factors weigh in favor of default judgment against Defendants. Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

      Cenegenics is likely suffering prejudice by Defendants' use of its trademarks. Defendants' use could confuse customers, create the belief that Cenegenics is involved with Defendants' companies, and result in customer loss. Additionally, Defendants have refused to participate in the litigation. Without resolving the issues, Cenegenics will remain without recourse. Thus, the first Eitel factor weighs in favor of default judgment.

      The second and third Eitel factors, the merits of plaintiff's substantive claim and sufficiency of the complaint, weigh in favor of default judgment. At this stage, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Televideo, 826 F.2d at 917. Cenegenics brought four causes of action. To prevail on the first and second claims for trademark infringement Cenegenics must show that it "holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005) (quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004)). Cenegenics attached the trademark paperwork to the complaint, satisfying the first requirement. (ECF #1, at 31–35). The complaint also alleges that Defendants' use of the trademark can cause confusion, mistake, or deception. The context in which it is used could make customers believe Cenegenics is involved with Defendants or that Cenegenics's products are inferior. With the allegations in the complaint taken as true, the Court finds that the merits of Cenegenics's claims weigh in favor of default judgment.

      Cenegenics brought its third claim under 15 U.S.C. § 1125(a) for unfair competition. The statute prohibits "false or misleading" representations, which are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with

another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Defendants used Cenegenics's mark on their website, blog posts, and on social media. Cenegenics alleges that this use has caused confusion or deception regarding Defendants' affiliation with Cenegenics and the quality of Cenegenics's products. Because the allegations are taken as true, this claim has merit and weighs in favor of default judgment.

To prevail on the Nevada Deceptive Trade Practices Act claim, Cenegenics must, at a minimum, show that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 658 (D. Nev. 2009). Further, the violation of other state or federal law is evidence of a violation of the Nevada Deceptive Trade Practices Act. The act states that a person "engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly violates a state or federal statute or regulation relating to the sale or lease of goods or services." NEV. REV. STAT. § 598.0923(1)(c). The merit of Cenegenics's other claims gives merit to this claim as well.

The complaint's allegations are sufficient and make plaintiff's substantive claims meritorious. For this reason, the second and third Eitel factor weigh in favor of default judgment.

The fourth Eitel factor, the sum of money at stake in the action, weighs in favor of default judgment as well. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." Landstar Ranger, Inc. v. Parth Enters., 725 F.Supp.2d 916, 921 (C.D. Cal. July 19, 2010) (citing Walters v. Statewide Concrete Barriers, Inc., No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)). Cenegenics admits that, due to the lack of discovery and evidence in this action, it is difficult to estimate the damages it has suffered. Instead, Cenegenics seeks to recover only its attorneys' fees and costs. Under the Lanham Act, exceptional cases may be awarded fees. 15 U.S.C. § 1117(a). To determine which cases are exceptional, courts examine the totality of the circumstances. SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 839 F.3d 1179, 1181 (9th Cir. 2016). "The Supreme Court explained that 'an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing

law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). The Supreme Court then cited a list of non-exclusive factors to consider, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554 n.6. The decision is made by a preponderance of the evidence. SunEarth, Inc., 839 F.3d at 1181.

Having considered the list of factors, the Court finds that fees are warranted. The allegations in the complaint include examples of the unauthorized use of the marks. Such evidence shows that the action is not frivolous. Cenegenics's motivation is to protect its trademark, as it has done in other lawsuits. Additionally, the award of fees may help deter future violations by Defendants, who were served and made aware of the lawsuit. Instead of defending the action or removing the unauthorized marks, Defendants indicated that they thought the lawsuit was pointless. Without the payment of fees and costs, there is no indication that Defendants will stop using the marks. As such, an award of costs and fees is warranted. Cenegenics is ordered to submit a proposed accounting of its fees and costs used to litigate this action.

The fifth and sixth Eitel factors weigh in favor of default judgment as well. Having considered the allegations in the complaint as true, there is no indication that a dispute concerning material facts exists. There is also no indication that Defendants failed to appear or defend due to excusable neglect. The record shows that they were served and that they were aware of the action. They have not made any effort to appear or to allege that excusable neglect exists to justify their lack of participation.

Six of the seven Eitel factors weigh in favor of default judgment. The seventh, the policy favoring decisions on the merits, is the only one that weighs against default judgment. However, the other six outweigh the policy. Defendants had many opportunities to appear and litigate the action on the merits. They chose not to, and default judgment is warranted.

IV. <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Default Judgment (ECF #32) is **GRANTED**.

Dated this 5th day of July, 2022.

                                          Kent J. Dawson
                                          United States District Judge